# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3766 | **DATE** | August 28, 2001 |
| **CASE TITLE** | *Rebecca Siegel, et al. vs. J&H Marsh & McLennon, Inc.* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court (1) grants defendant's motion to dismiss plaintiff's second amended complaint and (2) denies as moot defendant's motion to strike. Plaintiff's second amended complaint is dismissed. If it is possible for plaintiff to state a claim, *in good faith*, against defendant, she must do so by September 28, 2001 or her case will be closed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | **Document Number** |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | | AUG 29 2001 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | 31 |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | date mailed notice | |
| CW | courtroom deputy's initials | | LD-7 FOR FOR DOCKETING 01 AUG 28 PM 5:05 | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| REBECCA SIEGEL, AS GUARDIAN FOR CATHERINE LATHAM, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) ) | **DOCKETED** AUG 2 9 2001 |
| Plaintiff, | ) ) | |
| v. | ) ) | **Case No. 00 C 3766** |
| J&H MARSH & McLENNON, INC., n/k/a MARSH USA, INC., | ) ) ) | **Judge James H. Alesia** |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is defendant's motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), plaintiff's second amended complaint and motion to strike certain portions of the complaint, pursuant to Federal Rule of Civil Procedure 12(f). For the following reasons, the court grants defendant's motion to dismiss. The court denies defendant's motion to strike as moot.

## I. BACKGROUND

Plaintiff Rebecca Siegel ("plaintiff"), as guardian for Catherine Latham, brings this purported class action against defendant J&H Marsh ("defendant"). Plaintiff is a citizen of Iowa. Defendant, a Delaware corporation with its principal place of business in New York, is an insurance broker that sells insurance individually and on behalf of Lloyds. The amount in controversy exceeds $75,000. Thus, this court has original subject matter jurisdiction pursuant

to 28 U.S.C. § 1332. In her complaint, plaintiff alleges the following facts which are taken as true in ruling on this motion to dismiss.

In this case, defendant was a broker for Credit Bancorp, Ltd. ("CBL") and brokered insurance for CBL with Underwriters of Lloyds. Plaintiff, as guardian of Catherine Latham, deposited approximately $380,000 in securities from 1998-1999. Those deposits were made with CBL. Prior to her investing in CBL, and in an effort to induce plaintiff into depositing her monies and securities with CBL, CBL gave plaintiff a brochure in which defendant was listed under the heading "The Players" and was described as being an "Insurance Broker and Administrator." Further, in an attempt to induce plaintiff and other investors into investing their monies and securities with CBL, plaintiff was given an Insured Credit Facility Agreement (the "Agreement") within which representations and warranties were given that the transactions would be handled honestly and in good faith. (*See* 2d Am. Compl., Ex. F.) The Agreement stated that all securities would be placed in a custodial account in the name of CBL. Further, Douglas C. Brandon ("Brandon") was set forth as the trustee for the investors. In each transaction, an Agreement was executed by the individual investor and by Richard J. Blech ("Blech") as president and CEO of CBL. In addition, with each transaction, a limited trust arrangement was set up in the form of an Engagement Letter and Trust Instructions which was also executed by the investor, by Brandon as trustee, and by Blech on behalf of CBL. (*See* 2d Am. Compl., Ex G.)

Pursuant to the trust arrangements, the monies or securities were to be deposited directly in a CBL account, which was then insured by Underwriter's at Lloyds. This insurance was

2

secured, or brokered, by defendant. The insurance policies provided coverage from *inter alia* losses incurred by the dishonest or fraudulent acts of an employee of CBL or of a third party. The extent of coverage was made clear in a letter sent by James Hall ("Hall"), president of defendant, to Blech at CBL. In that letter, Hall made clear that insurance was secured for CBL accounts with outside insurance companies.

At all times, the Agreement stated that the monies and securities would be kept and maintained safely and securely. In order for any transaction to occur, the signature of the particular investor was required. However, at some point, Blech converted certain assets from the CBL accounts. Blech, covertly and contrary to the contractual and legal interests of both CBL and the investors such as plaintiff, began a scheme to defraud the investors. Blech arranged for the securities to be used in establishing margin accounts with a number of securities trading firms so that trading activities could be carried out for or on behalf of Blech. Blech illegally converted those securities for his own use or benefit. Specifically, Blech sold certain of the securities and converted them into cash which was used to make several extravagant purchases, including a home in France, jewelry, automobiles and a boat. In an attempt to conceal his illegal activities, Blech repurchased new funds with the use of other CBL investors' securities and monies. However, his attempts to hide his wrong-doing were insufficient, and on April 3, 2000, Blech was arrested in France on criminal charges related to the allegations contained in plaintiff's second amended complaint.

Prior to the implementation of the Agreement by CBL, purported extensive background checks were made into Blech's reputation and character by CBL and/or Brandon. This

investigation resulted in a "clean record" for Blech, and the Swiss Police issued a "Certificate of Good Character" for Blech. Also, plaintiff alleges that defendant and Lloyds conducted extensive investigatory efforts prior to issuing insurance coverage. However, plaintiff alleges that Brandon, Blech and defendant failed to provide any information which would have indicated that Blech was untrustworthy prior to plaintiff investing with CBL. Further, plaintiff alleges that Blech's activity was "carried out without the knowledge or authorization of the corporate entity CBL or its Board of Directors ...." (2d Am. Compl. at ¶ 17.) Finally, plaintiff alleges that defendant "did not disclose pertinent and material information as to Blech's conduct and the financial stability of CBL ...." (*Id.*) Any additional facts, the court will discuss in further detail under the relevant claim.

As a result of this dispute, plaintiff has filed a ten-count complaint against defendant. Count I is a claim for fraud and deceit, alleging that defendant's actions, omissions, and statements were not true but were made with the intention of deceiving investors such as plaintiff. Count II is a claim for misappropriation of the property or monies of the investors. Count III is a claim for conversion, alleging that the improper use and transfer of plaintiff's property constitutes wrongful conversion of the property. Count IV is a claim for interference with contractual relations, alleging that the wrongful and fraudulent conduct of the defendant resulted in the intentional interference with the contractual rights between CBL and the investors. Count V seeks an accounting, alleging that various accounts were sold at the direction of the defendant in an unauthorized fashion. Count VI is a breach of contract claim based upon a letter sent by Hall as defendant's representative to the investors regarding the guaranteed

coverage. Count VII is a claim for breach of consumer fraud. Count VIII is a claim for negligence, alleging that defendant had a duty to act with reasonable care in insuring and safeguarding the monies and securities deposited with CBL. Count IX is a claim for breach of fiduciary duty. Count X seeks a declaratory judgment.

Defendant argues that all ten counts should be dismissed for various reasons. Further, defendant seeks to have any references to James Hall stricken from the complaint. The court addresses defendant's arguments below.

## II. DISCUSSION

### A. Standard for Deciding a Rule 12(b)(6) Motion to Dismiss

In addressing defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f),[1] the court assumes that all factual allegations in the complaint are true and draws all reasonable inferences in favor of plaintiff. *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir. 1987); *Cromley v. Bd. of Educ. of Lockport,* 699 F. Supp. 1283, 1285 (N.D. Ill. 1988). If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss it. *See* FED. R. CIV. P. 12(b)(6); *Gomez,* 811 F.2d at 1039. However, the court may dismiss the claim only if it appears beyond a doubt that plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

---

[1]The standard for deciding a motion to dismiss pursuant to Rule 12(f) is the same standard used in determining a Rule 12(b)(6) motion. *Zip Dee, Inc. v. Domestic Corp.,* 900 F. Supp. 1004, 1008-09 (N.D. Ill. 1995).

While the Federal Rules of Civil Procedure provide a liberal notice pleading standard, the complaint must include either direct or inferential allegations with respect to all material elements of the claims asserted. *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir. 1991). Bare legal conclusions attached to narrated facts will not suffice. *Strauss v. City of Chicago,* 760 F.2d 765, 768 (7th Cir. 1985).

**B.      Standard for Stating a Claim Under Rule 9(b)**

Rule 9(b) sets forth special pleading requirements for claims involving fraud, and it is well-settled that a complaint alleging fraud must comport with Rule 9(b). FED. R. CIV. P. 9(b); *see also Ganino v. Citizens Util. Co.*, 228 F.3d 154, 168 (2d Cir. 2000). Rule 9(b) requires that when alleging fraud, "the circumstances constituting fraud ... must be stated with particularity." FED. R. CIV. P. 9(b). "To comply with the requirements of Rule 9(b) in alleging misstatement, an allegation of fraud must specify: '(1) those statements the plaintiff thinks were fraudulent, (2) the speaker, (3) where and when [the misstatements] were made, and (4) why plaintiff believes the statements fraudulent.'" *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 468 (S.D.N.Y. 2001) (quoting *Koehler v. Bank of Bermuda Ltd.*, 209 F.3d 130, 136 (2d Cir. 2000)). In ruling on a motion to dismiss pursuant to Rule 9(b), the court must "read the complaint generously and draw all inference in favor of plaintiffs." *Schupak v. Florescue*, No. 92 Civ. 1189, 1993 WL 256572, at *3 (S.D.N.Y. July 8, 1993). Further, although allegations of fraud may be based upon information and belief, those allegations "that fail to specify the time, place, speaker and content of the alleged misrepresentations lack the 'particulars' required by Rule 9(b)." *Id.* at *4.

## C. __Choice of Law__

As a preliminary, but important, matter, the court notes that defendant raises the possibility that either Illinois or New York law applies but takes the position that New York law applies because defendant is a citizen of New York and its relevant actions occurred in New York. However, defendant cites to both New York and Illinois law. Plaintiff does not address this issue at all, but she does cite predominantly to New York case law in her brief. Because of plaintiff's silence on this issue, the court infers that the parties do not dispute that New York law applies. The Seventh Circuit has held that "parties' agreement as to the application of a particular state's substantive law ... [can be] inferred from their failure to make an issue of it. ... Courts do not worry about conflict of laws unless the parties disagree on which state's law applies." *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991).

Moreover, from the information relevant to the choice-of-law question that the court can gleam from the second amended complaint and the parties' briefs, it appears that New York law should apply to this case. In deciding what state's law to apply, the court follows Illinois choice-of-law principles. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In deciding choice-of-law issues, Illinois courts apply the "most significant contacts" test. *Palmer v. Beverly Enter.*, 823 F.2d 1105, 1112 (7th Cir. 1987). In contract cases under this test, the court considers the following factors: (1) the place of contracting; (2) the place of negotiations; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, place of incorporation, and place of business of both parties. *Id.* at 1108-09.

In this case, the letter which plaintiff claims is the basis for her contract dispute with defendant, as well as the contract signed by plaintiff and entered into with CBL, appear to have been executed in New York. It does not appear that there were any negotiations between the parties. However, the securities and monies at issue were apparently located in New York at some point, and it appears that CBL operated out of New York. Finally, the defendant's place of business is New York. Thus, New York has significant, and possibly the most significant, contacts with the transactions at issue. In any event, the court will apply New York law in deciding defendant's motion to dismiss.

## D.    Counts I and VII – Common Law Fraud and Consumer Fraud

The elements of common law fraud under New York law are "essentially the same" as those required to state a claim for fraud under Rule 10b-5 of the Securities Exchange Act. *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 494 (S.D.N.Y. 2001). In order to state a claim for fraud under New York law, plaintiff must allege (1) defendant made a material, false misrepresentation; (2) defendant intended to defraud plaintiff with the false misrepresentation; (3) plaintiff reasonably relied upon the representation; and (4) plaintiff suffered damage as a result of that reliance. *Id.*; *see also Chanayil v. Gulati*, 169 F.3d 168, 171 (2d Cir. 1999) ("Under New York law, the elements of common law fraud are 'a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff.'") (citations omitted).

In its motion to dismiss, defendant argues that plaintiff's second amended complaint fails to allege the key elements with the particularity required by Rule 9(b). Specifically, defendant

argues that plaintiff only makes conclusory statements about defendant's conduct which fail to specify (1) who made fraudulent statements; (2) where or in what form these statements were made; and (3) what was fraudulent about any statements allegedly made by defendant. In response, plaintiff claims that she has alleged that defendant claimed that her monies and securities would be "kept and maintained safely and securely" and that the transactions would be "handled honestly and in good faith." (2d Am. Compl. ¶ 8.) Further, plaintiff claims that these statements were fraudulent given that Blech absconded with plaintiff's property, and that defendant knew of Blech's behavior but failed to inform plaintiff.

It is clear from plaintiff's complaint that the statements at issue in this claim are found in the Insured Credit Facility Agreement. (*See id.* ¶¶ 8-10, Ex. E.) In that agreement, plaintiff was told her funds would be kept safely and handled honestly and in good faith. However, those statements made in the Agreement are the representations of CBL, not defendant; the Agreement was distributed by CBL to plaintiff. Thus, the statements contained in the agreement are not attributable to defendant.[2] Defendant did issue a Certificate of Insurance; however, that certificate does not contain the statements which plaintiff claims were fraudulent but simply lists the facts surrounding the insurance coverage issued by Lloyds Underwriter. Therefore, the court

---

[2]Even if these statements were attributable to defendant, at best they are only false promises. "A false promise can support a claim of fraud only where it was collateral or extraneous to the terms of the enforceable agreement in place between the parties." *Weiss v. LaSuisse*, 69 F. Supp. 2d 449, 459 (S.D.N.Y. 1999) (holding that plaintiff's general allegation that the defendant entered into a contract lacking the intent to perform is insufficient to support a claim of fraud and only states a breach of contract claim, likewise an allegation that the insurer was engaged in a scheme to receive premiums without giving any benefits in return is insufficient to allege fraud).

finds that, even if the complaint did satisfy the requirements of Rule 9(b), the facts alleged in plaintiff's second amended complaint do not state a claim for fraud. Accordingly, the court grants defendant's motion to dismiss counts I and VII of plaintiff's second amended complaint.

### E.     <u>Count II – Misappropriation</u>

Generally, a misappropriation claim is brought as an essential element to an unfair competition claim; under New York law, the essence of an unfair competition claim is bad faith misappropriation of labors and expenditures of another. *See Franklin Resources, Inc. v. Franklin Credit Mgt. Corp.*, 988 F. Supp. 322, 338-39 (S.D.N.Y. 1997). In fact, the courts have found that misappropriations claims are for the protection of persons who have "disclosed their ideas to others in the expectation that the idea would be used, and the use compensated." *Hogan v. DC Comics*, No. 96-CV-1749, 1997 WL 570871, at *5 (N.D.N.Y. 1997). Under New York law, in order to state a claim for misappropriation, a plaintiff must allege that defendant, in bad faith, misappropriated plaintiff's "labors and expenditures." *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, 25 F. Supp. 2d 154, 167 (S.D.N.Y. 1998). During this court's research, it was unable to locate any case which recognized a claim for misappropriation based upon stolen money or securities; a misappropriation claim is brought for the uncompensated taking of ideas or intellectual property. Thus, a claim for misappropriation is not proper in the present action. Accordingly, the court grants defendant's motion to dismiss count II of plaintiff's second amended complaint.

## F.    Count III – Conversion Claim

Count III is a claim for conversion against defendant. Plaintiff claims that (1) the conduct of the defendant with "respect to the improper use, sale and transfer of the property and/or monies" of the investors constitutes wrongful conversion; (2) plaintiff has made demand for the return of the monies or property; and (3) defendant has refused to relinquish possession. (2d Am. Compl. ¶ 28.) However, plaintiff's complaint makes clear that it was Blech who wrongfully took possession of the property (*id.* ¶¶ 12-15); defendant's alleged wrongdoing was its failure to "disclose pertinent and material information as to Blech's conduct ...." (*Id.* ¶ 17.)

In order to state a claim for conversion under New York law, plaintiff must allege (1) an actionable wrong other than breach of contract caused plaintiff's injury; (2) plaintiff had ownership of the funds at the time they were converted; (3) defendant exercised unauthorized dominion over the funds; (4) the funds were specific and identifiable; and (5) the defendant was to have treated the funds in a particular manner but they were not so treated. *Rozsa v. May Davis Group, Inc.*, No. 01 Civ. 2622, 2001 WL 873212, at *7 (S.D.N.Y. Aug. 1, 2001). Further, under New York law, a "denial or violation of the plaintiff's dominion, rights, or possession, is the basis of an action for conversion." *Chateaugay Corp. v. LTV Steel Co.*, 10 F.3d 944, 957 (2d Cir. 1993) (quotations omitted).

In its motion to dismiss, defendant argues that plaintiff did not – and cannot – allege that defendant has or had custody or control of the securities at issue. In response, plaintiff claims that defendant acted in concert with CBL and Blech and that the defendant held itself out as an integral part of CBL and should be accountable for the actions taken by CBL.

In reviewing the second amended complaint, the court finds no allegation in fact or in law which states that the defendant had any control over the securities at issue. Although plaintiff alleges that defendant made certain representations and warranties, and failed to provide information to the investors, this does not mean that defendant had control over the securities. In fact, it is clear from the second amended complaint that Blech has or had control over those securities and monies which were taken. (2d Am. Compl. ¶¶ 12-15.) Plaintiff's allegation that defendant's conduct constituted conversion is nothing more than a legal conclusion that the court need not accept as true. Thus, based upon the facts alleged in plaintiff's second amended complaint, the court finds that plaintiff has not – and cannot – allege that defendant retained possession, control or dominion over the securities or monies at issue. Accordingly, the court grants defendant's motion to dismiss count III of plaintiff's complaint.

## G.  Count IX – Breach of Fiduciary Duty

Count IX is a claim against defendant for breach of fiduciary duties owed to plaintiff and the investors. Plaintiff alleges that defendant had a "fiduciary duty to act with reasonable the highest [sic] degree of care in insuring and safeguarding" plaintiff's monies and securities. (2d Am. Compl. ¶ 45.) Defendant argues that this count should be dismissed because plaintiff has failed to plead facts which establish any fiduciary duty owed to plaintiff by defendant.

Federal Rule of Civil Procedure 8(a)(2) governs the pleading requirements for a claim alleging a breach of fiduciary duty. *See Schupak*, 1993 WL 256572, at *3. To state a claim for breach of fiduciary duty, plaintiff must allege (1) the existence of a fiduciary relationship; (2)

the nature of the relationship and when and how it arose; and (3) the circumstances surrounding the breach of the relationship. *Id.*

A fiduciary relationship is one that is based on "trust or other confidence reposed by one person in the integrity and fidelity of another." *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97 Civ. 4978, 1999 WL 47223, at *6 (S.D.N.Y. Feb. 3, 1999) (citations omitted) (holding that, under New York law, there is no fiduciary duty owed to the investing public by a officer or shareholder of a corporation). To establish the existence of a fiduciary duty, plaintiff can either allege a fiduciary relationship created by law or one created by past dealings or prior relationships such that trust and confidence have been reposed. *See id.* "The duty of disclosure is premised on the existence of a fiduciary relationship." *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, No. 96 Civ. 3231, 1998 WL 167330, at *19 (S.D.N.Y. Apr. 8, 1998). Plaintiff must state specific facts that give rise to an inference that a fiduciary relationship exists. *Id.* Further, a fiduciary duty must "spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *LaBarte v. Seneca Res., Corp.*, 2001 WL 743261, at *3 (N.Y. App. Ct. July 3, 2001) (citations omitted). Whether a fiduciary relationship exists between the parties is fact-specific to the particular case. *Id.*

"No special relationship of trust or confidence arises out of an insurance contract between the insured and the insurer; the relationship is legal rather than equitable." *Batas v. Prudential Ins. Co. of Am.*, 724 N.Y.S.2d 3, 7 (N.Y. App. Ct. 2001) (finding that, because plaintiffs failed to show that their relationship with the defendants was unique or differed from that of a

reasonable consumer, the relationship between parties to an insurance contract was simply contractual in nature). *See also Gaidon v. Guardian Life Ins., Co.*, 679 N.Y.S.2d 611, 611-12 (N.Y. App. Ct. 1998) (dismissing an insured's breach of fiduciary duty because the allegations of reliance and trust necessary for a finding of fiduciary or confidential relationship were stated in conclusory fashion and the insurer's superior knowledge did not create such a relationship). In New York, the imposition of a fiduciary duty has been limited to circumstances where a relationship of trust and confidence has been created between the parties, and the relationship between an insurer and a policy holder has been viewed as an ordinary, arms-length commercial transaction. *See Batas*, 724 N.Y.S.2d at 13 (J. Saxe, dissenting).[3] "Except as required by statute, insurance companies deal with insureds at arm's length. No relationship involving trust or confidence is present." *New York Hotel Trades Council v. Prudential Ins. Co. of Am.*, 144 N.Y.S.2d 303, 307 (N.Y. Sup. Ct. 1955). Although an informal fiduciary relationship may arise in a commercial setting when a party places special trust and confidence in another, plaintiff has alleged nothing that gives rise to this "special" relationship (i.e., plaintiff has not alleged she was an uninformed prospective purchaser of a complex policy with hidden premiums, or that she was elderly and infirm). *See e.g., Evvtex Co. v. Hartley Cooper Assocs. Ltd.*, 102 F.3d 1327, 1332 (2d Cir. 1996).

---

[3]However, the court notes that a fiduciary duty may arise between an insurance company and its insured once the insurer is called upon to provide a defense to its insured in the context of a liability claim. *See Hartford Accident & Indem. Co. v. Michigan Mut. Ins. Co.*, 462 N.Y.S.2d 175 (N.Y. App. Ct. 1983).

In her complaint, plaintiff alleges only that defendant – an insurance broker – owed a fiduciary duty to plaintiff and other investors. The court is not obligated to accept this legal conclusion as true. Plaintiff has not alleged a legally created fiduciary relationship (such as the existence of a partnership or joint venture). Further, plaintiff has alleged nothing from which this court could find that the past dealings between defendant and plaintiff created a special, fiduciary relationship. Plaintiff's complaint alleges nothing more than an alleged contractual relationship that arises from insurance coverage procured by defendant. This type of relationship does not give rise to a special trust and confidence between defendant and plaintiff.

In response to defendant's motion, plaintiff argues that a fiduciary duty arose because defendant was obligated to provide plaintiff with all relevant information upon which to base her decision. In support, plaintiff cites to *In re Meridia*, 772 F. Supp. 223, 229 (E.D. Penn. 1991) where the court found that a duty can exist when information is circulated for the specific purpose of inducing members of a class to invest. The court disagrees with plaintiff's characterization of *Meridia*. First, the court in *Meridia* found only an ordinary duty, giving rise to a negligence claim – not a special, fiduciary duty. Second, *Meridia* involved the dissemination of false material by a company and its directors; in the present case, defendant did not disseminate any information, rather CBL provided the literature to plaintiff.

Also, plaintiff argues that defendant acted as her agent in procuring insurance for CBL and, therefore, had a duty to disclose information about Blech's illegal behavior. First, CBL – and Belch – were the principals who employed defendant to obtain insurance. Thus, any duty of disclosure owed by defendant was to CBL. There is no allegation that defendant did not

provide full disclosure to CBL of everything it knew. Further, Blech – as an agent of CBL – and his illegal activities are what is at issue in this case. Thus, the court cannot see how defendant could have been obligated to disclose information about its principal to its principal.

In sum, the court finds that plaintiff has not alleged that a special confidence or trust was established between herself and defendant. Thus, no fiduciary relationship existed between plaintiff and defendant, and no fiduciary duty was owed to plaintiff by defendant. Accordingly, the court grants defendant's motion to dismiss count IX of plaintiff's second amended complaint.

## H. Count V – Claim for an Accounting

Count V of plaintiff's second amended complaint seeks an accounting with respect to the handling of all the securities at issue, including how the custodial accounts were administered or handled under the supervision of defendant, how the insurance for the investors was purchased and implemented, and how the securities were handled, transferred, sold, or converted. Defendant argues that this claim must be dismissed because plaintiff has not, and cannot, establish the existence of a partnership, joint venture, or fiduciary relationship. Plaintiff responds that the defendant did owe a fiduciary duty to the investors.

In order to sustain an equitable action for accounting under New York law, a plaintiff must show either a fiduciary or confidential relationship with the defendant. *Leveraged Leasing Admin. Corp. v. Pacificorp Capital, Inc.*, 87 F.3d 44, 49 (2d Cir. 1996).[4] "Under New York law,

---

[4]While in some cases New York courts have held that a fiduciary or confidential relationship need not be alleged, in those cases the plaintiff was seeking monetary relief. *See Leveraged Leasing*, 87 F.3d at 49 (holding that, because plaintiff was seeking monetary relief through its breach of contract and conversion claims, an action at law for an accounting would have been duplicative). In this case, plaintiff is clearly seeking equitable action.

16

a fiduciary relationship must exist in order to state a claim in equity for an accounting that arises out of a contract." *Lindsay v. R.M.S. Titanic*, No. 97 Civ. 9248, 1998 WL 557591, at *6 (S.D.N.Y. Sept. 2, 1998). Because the court has already determined that plaintiff has failed to allege that a fiduciary relationship existed between plaintiff and defendant, the court finds that plaintiff is not entitled to an accounting. Accordingly, the court grants defendant's motion to dismiss count V of plaintiff's second amended complaint.

## I.    Count VI – Breach of contract

In count VI of her second amended complaint, plaintiff alleges that defendant – through a letter from James Hall, an agent of defendant – agreed to provide plaintiff with adequate insurance coverage for the type of losses alleged in the complaint. (2d Am. Compl. at ¶ 37.) Thus, it appears that this count – for breach of contract – is based upon a contractual obligation created by a letter sent by Hall.

To state a claim for breach of contract under New York law, a plaintiff must allege (1) the existence of a contract; (2) performance of the contract by one party; (3) breach of contract by the other party; and (4) damages caused by the breach. *In re Lloyds Am. Trust Fund Litig.*, 954 F. Supp. 656, 681 (S.D.N.Y. 1997).

Defendant argues that this claim must be dismissed because plaintiff was never a party to any contract but that the contract was between defendant and CBL. In response, plaintiff argues that she is not required to prove the contractual relationship at this point, but she must allege only the existence of a contractual relationship. While plaintiff need not *prove* the merits of her claim, she cannot allege facts which contradict her claim. In this case, the letter cited by

plaintiff as the basis for the contractual relationship was from Hall to Blech. Consequently, if anything, the letter establishes a contractual relationship between defendant and CBL; it is clear that plaintiff is not a party to that contract. Further, the letter is in regards to insurance coverage for CBL as provided by third-party insurance companies, not defendant.[5] It is likely that any contractual obligations that relate to the allegations contained in plaintiff's second amended complaint are between CBL and Lloyds. Regardless, it is clear that nothing in the complaint establishes that plaintiff and defendant were parties to the same contract. Thus, the court finds that plaintiff has failed to allege the existence of a contractual relationship between herself and defendant. Accordingly, the court grants defendant's motion to dismiss count VI of plaintiff's second amended complaint.

## I.    Count IV – Interference with Contractual Relations

In order to state a claim for interference with contractual relations under New York law, a plaintiff must allege (1) the existence of a valid contract; (2) that defendant knowingly and intentionally interfered with that contract without reasonable justification; and (3) plaintiff was damaged by defendant's interference. *Int'l Minerals & Resources v. Lygren*, 96 F.3d 586, 595 (2d Cir. 1996); *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996) ("Under New York law, the elements of a tortious interference claim are: (a) that a valid contract exists; (b) that a 'third

---

[5]In her response brief, plaintiff makes mention that she is a third-party beneficiary to the contract. (Pl.'s Resp. Br. at 2.) However, plaintiff does not address this issue in her argument section. Further, nothing in plaintiff's complaint alleges that she is stating a claim as a third-party beneficiary to any contract.

party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff.")

In this case, plaintiff alleges that defendant knew of the contract between plaintiff and CBL, including the contract for insurance coverage, and that defendant's fraudulent conduct constituted intentional interference with the contractual rights between CBL and plaintiff. (2d Am. Compl. ¶ 30.) Defendant moves to dismiss this claim contending that plaintiff has failed to adequately allege (1) what contract existed between plaintiff and CBL and (2) how defendant intentionally induced any party to breach any contract. In her response, plaintiff simply states that she has alleged all the requisite elements. The court agrees with defendant that plaintiff's second amended complaint fails to specify (1) what contract entered into between plaintiff and a third party is at issue in this claim and (2) how defendant interfered with that contract.[6] Thus, plaintiff has failed to state a cause of action for tortious interference with contractual rights. Accordingly, the court grants defendant's motion to dismiss count IV of plaintiff's second amended complaint.

## J.     Count VIII – Negligence

In count VIII of her complaint, plaintiff alleges that defendant had a duty to act with reasonable care in insuring and safeguarding plaintiff's monies and securities and that defendant breached that duty. Defendant moves to dismiss this claim, arguing that it did not owe a duty

---

[6]While the court can assume that the contract at issue in this claim is the Insured Credit Facility Agreement, there are no allegations as to how defendant interfered with that Agreement. In fact, in count VI, plaintiff appears to be alleging that defendant was also a party to that Agreement.

to plaintiff. Specifically, defendant contends that plaintiff has not alleged any relationship between herself and defendant that would give rise to a duty of care. Plaintiff, in response, argues that plaintiff and defendant developed a fiduciary relationship based upon defendant's role in the transaction, and that the duty of care arises from the fiduciary relationship.

The court has already determined that a fiduciary relationship did not exist between plaintiff and defendant. *See infra* Sect. II.G. Further, based upon the facts alleged in plaintiff's complaint, the court finds that plaintiff has failed to allege any relationship between herself and defendant that would give rise to a duty of care.[7] Thus, plaintiff has failed to state a negligence claim against defendant. Accordingly, the court grants defendant's motion to dismiss count VIII of plaintiff's second amended complaint.

## K.  Count X – Declaratory Judgment

In count X, plaintiff seeks an declaratory judgment from this court that the conduct of defendant violated the terms of the trust agreement set up by CBL to the extent that defendant's alleged fraudulent statements or omissions were unauthorized and constitute illegal and unauthorized acts outside the scope fo the trust agreement. Defendant seeks to dismiss this count, claiming that it is not a party to the trust agreement, as attached to plaintiff's second amended complaint at Exhibit G. The court agrees. It is clear from the documents attached to plaintiff's second amended complaint that defendant was not a party to the trust agreement, but that the agreement was entered into between CBL and investors like plaintiff. *See also infra*

---

[7]The court notes that, although an insurance broker – as an agent of the principal – may owe a duty to the insured, in this case, defendant was a broker and an agent for CBL – not plaintiff.

Sect. II.I. Thus, plaintiff has failed to state a claim for declaratory judgment. Accordingly, the court grants defendant's motion to dismiss count X of plaintiff's second amended complaint.

### III. CONCLUSION

For the foregoing reasons, the court grants defendant's motion to dismiss plaintiff's second amended complaint. Plaintiff's complaint is dismissed. Defendant's motion to strike is denied as moot.

Date: AUG 2 8 2001

James H. Alesia
United States District Judge

21